Rachel HICKERSON, et al., Plaintiffs,

v.

The CITY OF NEW YORK,
et al., Defendants.

AMSTERDAM VIDEO INC.,
et al., Plaintiffs,

v.

The CITY OF NEW YORK,
et al., Defendants.

Nos. 96 Civ. 2203 (MGC),
96 Civ. 2204 (MGC).

United States District Court,
S.D. New York.

June 27, 1996.

New York Civil Liberties Union Foundation by Beth Haroules, Norman Siegel, Christopher Dunn, New York City, for plaintiffs Rachel Hickerson et al.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria by Herald Price Fahringer, Erica T. Dubno, New York City, for plaintiffs Amsterdam Video, Inc.

Paul A. Crotty, Corporation Counsel of the City of New York by Albert Fredericks, Gabriel Taussig, Assistant Corporation Counsel, New York City, for defendants.

CEDARBAUM, District Judge.

Plaintiffs in these two actions challenge the constitutionality of a recent amendment to the New York City zoning resolution which regulates the zoning of "adult establishments." Defendants, the City of New York and three City officials, removed the actions to this Court because the complaints assert claims under the United States Constitution as well as the New York State Constitution. Plaintiffs move to remand the actions, including the federal constitutional claims, to the state court. For the reasons that follow, these cases warrant abstention under the doctrine of *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Accordingly, all of the claims arising under the New York Constitution are remanded to the Supreme Court of New York County. Remand of the federal claims is denied but the federal claims are stayed pending resolution of the state claims.

*Background*

The New York City Council adopted Text Amendment N 950384 ZRY (the "resolution") to the city zoning resolution on October 25, 1995. The resolution adds to the zoning resolution special provisions applicable to "adult establishments." It defines an adult establishment as "a commercial establishment where a 'substantial portion' of the establishment includes an adult book store, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or any combination thereof." Resolution § 12–10. (The resolution is attached to the *Amsterdam* complaint and also is Exhibit A to the Declaration of Albert Fredericks dated May 16, 1996.) Adult bookstores are defined as bookstores that have as a "substantial portion" of their stock-in-trade books, magazines, photographs, films, video cassettes, or other printed matter or visual representations that are "characterized by an emphasis upon the depiction or description of 'specified sexual activities' or 'specified anatomical areas.'" *Id.* § 12–10(a). An adult eating or drinking establishment is an eating

or drinking establishment that "regularly features" either live performances that are "characterized by an emphasis on 'specified anatomical areas' or 'specified sexual activities'": films or other photographic reproductions that are "characterized by an emphasis upon the depiction or description of 'specified sexual activities' or 'specified anatomical areas'"; or "employees who, as part of their employment, regularly expose to patrons 'specified anatomical areas'"; and "which is not customarily open to the general public during such features because it excludes minors by reason of age." *Id.* § 12–10(b). An adult theater is a theater that "regularly features" films or other similar photographic reproductions that are "characterized by an emphasis on the depiction or description of 'specified sexual activities' or 'specified anatomical areas'" or live performances that are "characterized by an emphasis on 'specified anatomical areas' or 'specified sexual activities,'" and "which is not customarily open to the general public during such features because it excludes minors by reason of age." *Id.* § 12–10(c). Other adult commercial establishments are facilities that "feature[ ] employees who as part of their employment, regularly expose to patrons 'specified anatomical areas' and which is not customarily open to the general public during such features because it excludes minors by reason of age." § 12–10(d).

The resolution defines "specified sexual activities" and "specified anatomical areas." *Id.* § 12–10. It does not define "substantial portion" as that term is used in the definition of adult establishment and adult bookstore, but provides that

for the purpose of determining whether a "substantial portion" of an establishment includes an adult bookstore, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or combination thereof, the following factors shall be considered: (1) the amount of floor area and cellar space accessible to customers and allocated to such uses; and (2) the amount of floor area and cellar space accessible to customers and allocated to such uses as compared to the total floor area and cellar space accessible to customers in the establishment.

*Id.* With respect to the definition of adult bookstores the resolution provides:

For the purpose of determining whether a bookstore has a "substantial portion" of its stock in materials defined in paragraphs (a)(1) or (a)(2) hereof, the following factors shall be considered: (1) the amount of such stock accessible to customers as compared to the total stock accessible to customers in the establishment; and (2) the amount of floor area and cellar space accessible to customers containing such stock; and (3) the amount of floor area and cellar space accessible to customers containing such stock as compared to the total floor area and cellar space accessible to customers in the establishment.

*Id.* The resolution does not define the phrases "regularly features" or "characterized by an emphasis," which are used in the definitions of adult eating and drinking establishment and adult theater.

The resolution provides that adult establishments are not permitted in various zoning districts, including residential districts and some commercial and manufacturing districts. *Id.* §§ 32–01; 42–01; Fredericks Decl. ¶ 8. It provides further that adult establishments must be located at least 500 feet from a church or school or another adult establishment. Resolution §§ 32–01(b) & (c); 42–01(b) & (c). Under the resolution, one adult establishment only is permitted on a single zoning lot and no adult establishment is permitted to exceed 10,000 square feet in floor area and cellar space. *Id.* §§ 32–01(d) & (e); 42–01(d) & (e). The resolution also includes special sign regulations for adult establishments. *Id.* §§ 32–69; 42–55.

Non-conforming adult establishments must, under the resolution, terminate within one year of the effective date of the resolution. *Id.* § 52–77. The resolution includes special "amortization" provisions, however, for owners of non-conforming establishments who have not recovered substantially all of their capital investment in the establishment (or non-conforming sign). Such owners may apply to the Board of Standards and Appeals for permission to continue for additional time sufficient for the owner to recover "substan-

tially all of the financial expenditures incurred related to the non-conformity." *Id.* § 72–40.

The resolution became effective on November 1, 1995, less than one year ago. Accordingly, no establishment has yet been required to close or move because of its provisions. Moreover, the resolution has not been construed by any court.

Plaintiffs in the first action (the "*Hickerson* plaintiffs") are Manhattan and Bronx residents who allege that they regularly patronize adult establishments. They claim that the resolution will prevent them from continuing to patronize the adult establishments they currently frequent, and will reduce significantly the number of alternative establishments available to them. The *Hickerson* plaintiffs contend that the resolution violates their rights to free expression. They assert three claims under article I section 8 of the New York Constitution and three claims under the First and Fourteenth Amendments to the United States Constitution. As their first cause of action, plaintiffs allege that the resolution intentionally restricts expression because it is directed at the "content and the time, place and manner of the messages conveyed in 'adult businesses,'" and that it is not necessary to advance a compelling interest and does not advance an interest in the least restrictive manner. (*Hickerson* Compl. ¶¶ 72–73.) As their second cause of action, the *Hickerson* plaintiffs claim that the resolution "fails to restrict expression by means 'no broader than necessary' to achieve a legitimate and important governmental objective." (*Id.* ¶ 77.) As a third cause of action plaintiffs allege that the resolution violates article I section 8 of the New York Constitution in that it is too vague. (*Id.* ¶¶ 79–83.) As a fourth cause of action, plaintiffs assert that the resolution violates the First Amendment to the United States Constitution by failing to satisfy the requirements of *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). (*Id.* ¶¶ 84–90.) As a fifth cause of action, the complaint alleges that the resolution is a content-based restriction that is not narrowly tailored to serve a compelling government interest, in violation of the First Amendment. (*Id.* ¶¶ 91–94.) Finally, as a sixth cause of action, the complaint alleges that the resolution violates the First and Fourteenth Amendments because it is too vague. (*Id.* ¶¶ 95–99.)

Plaintiffs in the second action (the "*Amsterdam* plaintiffs") are owners and operators of business establishments which they allege are adult establishments as defined by the resolution. They allege that the resolution will force them to terminate the operation of their businesses and thereby cause them significant economic harm. The *Amsterdam* plaintiffs assert fourteen causes of action, thirteen of which allege violations of the state constitution. Four causes of action elaborate different aspects of plaintiffs' claim that the resolution violates their rights to free expression under article I section 8. (*Amsterdam* Compl. ¶¶ 143–238.) Five causes of action assert that the resolution denies plaintiffs equal protection of the law in violation of article I section 11. (*Id.* ¶¶ 239–54, 274–92, 312–17.) The *Amsterdam* plaintiffs also assert two causes of action alleging that the resolution is unconstitutionally vague, (*id.* ¶¶ 270–73, 293–311), one cause of action alleging that the resolution grants an impermissible preference in favor of religion in violation of article I section 3, (*id.* ¶¶ 255–69), and one cause of action alleging that the amortization provisions of the resolution are inadequate and constitute an unconstitutional taking without just compensation in violation of article I section 7, (*id.* ¶¶ 318–31). As a fourteenth cause of action the *Amsterdam* complaint alleges that the resolution violates plaintiffs' rights to free speech and to equal protection of the law in violation of the First and Fourteenth Amendments to the United States Constitution. (*Id.* ¶¶ 332–43.)

Plaintiffs in both cases seek declaratory and injunctive relief. The *Hickerson* plaintiffs request in addition costs and attorneys' fees.

### *Pullman Abstention*

▮ Abstention is an extraordinary and narrow exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*,

424 U.S. 800, 813, 817, 96 S.Ct. 1236, 1244, 1246, 47 L.Ed.2d 483 (1976) (citations omitted); *see also Quackenbush v. Allstate Ins. Co.,* —— U.S. ——, ——, 116 S.Ct. 1712, 1721, 135 L.Ed.2d 1 (1996). Abstention is warranted only in "exceptional circumstances" in which the court's decision not to exercise its jurisdiction would "clearly serve an important countervailing interest." *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244 (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)). Federal courts are also obligated, however, to avoid deciding a federal constitutional question unless decision is "absolutely necessary to a decision of the case." *Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J. concurring). Of particular relevance here is the well-settled rule that a case should be decided first on state law grounds in order to eliminate the need to decide a federal constitutional question. *Siler v. Louisville & Nashville R.R.,* 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909).

In *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the plaintiffs challenged an order of the Texas Railroad Commission requiring railroad sleeping cars to be staffed by a person with the rank of Pullman conductor. All Pullman conductors were white, and all Pullman porters were African–American. Until the challenged order, Pullman porters were in charge of sleeping cars on trains carrying only one such car. The Pullman Company and the railroads argued in federal court that the order violated Texas law and the Equal Protection, Due Process, and Commerce Clauses of the United States Constitution. Pullman porters intervened and claimed that the order unconstitutionally discriminated against them. The district court found in the plaintiffs' favor and enjoined enforcement of the order. *Id.* at 497–98, 61 S.Ct. at 644.

The Supreme Court reversed, holding that the district court should have stayed its hand until the Texas courts had ruled on the state law question. The Court explained that the porters' federal claim raised a "more than substantial" constitutional question, which the federal courts ought to avoid unless "no alternative to its adjudication is open." *Id.* at 498, 61 S.Ct. at 644. The Court then examined the Commission's power to issue the order under Texas law, and found that because the governing law was "far from clear," a decision by a federal court could not "escape being a forecast rather than a determination." *Id.* at 499, 61 S.Ct. at 645. A ruling by a federal court would amount to only a "tentative decision" which could be "displaced tomorrow by a state adjudication." *Id.* at 500, 61 S.Ct. at 645. Emphasizing that the plaintiffs appealed to the equitable powers of the federal court, the Court invoked the obligation of a court sitting in equity to exercise sound discretion in employing equitable remedies. It noted that "[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies." *Id.* In view of the important policies of avoiding both constitutional questions and undue interference with state governments, the Court held that abstention from the constitutional claim was required, and remanded the case to the district court with instructions to stay the action pending proceedings in the state court to determine the validity of the order under state law. *Id.* at 501–502, 61 S.Ct. at 645–646.

Under *Pullman,* "abstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244 (quoting *County of Allegheny,* 360 U.S. at 189, 79 S.Ct. at 1063 (internal quotation marks omitted)). The relevant state law must be unclear to warrant abstention. *E.g. Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); *Pullman.* Abstention is not required in every case in which a plaintiff raises claims under both the federal constitution and "parallel state constitutional provisions." *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 237 n. 4, 104 S.Ct. 2321, 2327 n. 4, 81 L.Ed.2d 186 (1984). The Supreme Court has ordered abstention in several

cases, however, in which a ruling by a state court as to whether the challenged statute violated the relevant state constitution could avoid the need for the determination of a federal constitutional question. *Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *Reetz; City of Meridian v. Southern Bell Telephone & Telegraph Co.,* 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959) (per curiam); *see also Askew v. Hargrave,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971) (per curiam) (remanding for consideration of abstention under *Pullman* abstention principles explained in *Reetz* where plaintiffs alleged that Florida statute violated federal constitution and another action pending in state court challenged same statute under state constitution).

■ Plaintiffs' principal challenge to the resolution is their claim that the resolution violates their rights of free expression. The New York Court of Appeals has held that the New York Constitution protects rights to free expression that the First Amendment does not protect. *See People ex rel. Arcara v. Cloud Books, Inc.,* 68 N.Y.2d 553, 510 N.Y.S.2d 844, 503 N.E.2d 492 (1986). Article I section 8 provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press." This language is different from that of the First Amendment, which provides: "Congress shall make no law … abridging the freedom of speech, or of the press…." Plaintiffs raise substantial claims under the state constitution. These state constitutional claims should be determined before plaintiffs' claims under the federal constitution, because a ruling that the resolution violates the state constitution would obviate the need to decide the federal constitutional questions. *See Pullman; Ashwander; Siler.*

The state constitutional claims present questions whose resolution is "far from clear." Although the New York Court of Appeals decided in *Town of Islip v. Caviglia* that a zoning ordinance adopted by the Town of Islip to regulate adult establishments did not violate article I section 8, 73 N.Y.2d 544, 542 N.Y.S.2d 139, 540 N.E.2d 215 (1989), it is uncertain how a New York court would apply that case to the resolution challenged here. The Islip ordinance governed bookstores, drive-in theaters, motels, theaters, and "peep shows" that were "not open to the public generally but exclude[d] any minor by reason of age." 73 N.Y.2d at 562–63, 542 N.Y.S.2d at 149, 540 N.E.2d at 225. Only the definitions of "adult entertainment cabaret" (which encompassed any "public or private establishment which present[ed] topless dancers, strippers, male or female impersonators or exotic dancers, or other similar entertainments and which establishment [was] customarily not open to the public generally but exclude[d] any minor by reason of age") and "massage establishment" made any reference to the subject matter of the books, films, or other materials stocked or "featured" by the adult establishment. By contrast, the resolution defines all of the affected establishments by reference to whether their wares or live performances or the activities of their employees emphasize "specified sexual activities" or "specified anatomical areas." In *Caviglia,* the Court of Appeals found that the ordinance did not require forty-three percent of adult establishments in the community to move, and that the town rezoned some land to permit an adult bookstore to remain at its pre-ordinance location. Plaintiffs in these cases allege that the resolution will require more than eighty-four percent of existing adult establishments to move or close. The court found in *Caviglia* that substantial space in Islip was available for adult establishments, but plaintiffs here contend that insufficient alternative space is available for the large number of adult establishments in New York City. Because of these and other differences between the *Caviglia* case and these cases, the outcome of plaintiffs' state constitutional challenge is uncertain. As was true of the state law claims in *Pullman,* a federal court's judgment of the resolution's constitutionality under the state constitution would be a mere forecast rather than a determination. These claims should be decided by the state courts before any federal constitutional issue is reached.

Defendants argue that abstention is unwarranted because the federal constitutional claims do not logically depend on the state constitutional claims. (Def.Mem. at 14.) But the federal claims in *Pullman* also did not depend on the state law claim raised there. Abstention is appropriate because plaintiffs have brought claims under a provision of the state constitution that differs from the provision of the federal constitution on which they rely, the state constitutional law is not settled, and resolution of the claims under the state constitution may avoid the need for a determination of the federal constitutional questions.

In addition, plaintiffs' claims that the resolution is unconstitutionally vague depend on interpretation of a new resolution that has not been construed by any court. The meaning of phrases in the resolution such as "substantial portion" and "regularly feature" are not at once apparent. A federal court should not be the first to construe these provisions. Abstention is warranted to give the New York courts an opportunity to construe the resolution, for the courts could interpret these phrases in such a way as to change or eliminate the vagueness claims. *Greater New York Metro. Food Council v. McGuire*, 6 F.3d 75 (2d Cir.1993) (per curiam).

For all of these reasons, these cases present exceptional circumstances which require abstention. The state claims are remanded to state court, and the federal claims are stayed until conclusion of the state litigation.

### *Burford Abstention, Remand, and Supplemental Jurisdiction*

■ As explained above, plaintiffs' state constitutional claims are remanded and the federal claims stayed. Plaintiffs, however, want more. They seek to have their federal constitutional claims adjudicated by a state court. Plaintiffs argue that the doctrine of *Burford* abstention and 28 U.S.C. § 1441(c) both authorize remand of the claims arising under the Constitution of the United States. In addition, the *Amsterdam* plaintiffs suggest that remand is authorized by 28 U.S.C. § 1367.

■ Only extraordinary circumstances justify a federal court's refusal to decide claims that fall within its original jurisdiction. The court's responsibility to exercise jurisdiction is especially strong when, as here, substantial claims under the federal constitution are presented. Plaintiffs argue that this obligation is limited to the duty to protect a plaintiff's right to have federal constitutional claims adjudicated by a federal court. Plaintiffs reject defendants' correlative right to a federal forum.

Plaintiffs are the masters of their complaints, and these plaintiffs could have assured themselves a state forum by bringing only claims arising under state law. Plaintiffs are, of course, entitled to raise any claim for which they have a good faith basis. But if plaintiffs choose to assert claims under the constitution of the United States, defendants are entitled to remove the case to federal court. 28 U.S.C. § 1441(a) (1994).

The City of New York and its officials are entitled to have their responsibilities under the federal constitution determined by a federal court. Although I have held that exceptional circumstances are present which justify staying the federal claims until the state courts have decided the state constitutional claims, the circumstances that would justify a decision entirely to relinquish the federal claims do not exist. That is, the circumstances justify delaying decision on the federal claims, but not complete abdication. For the reasons explained below, the authority on which plaintiffs rely does not provide a basis for remand of the federal constitutional claims.

#### 1. *Burford* Abstention

In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court held that the district court, as a matter of sound equitable discretion, should have declined to exercise jurisdiction over the plaintiff's due process challenge to an order of the Texas Railroad Commission. The Commission's order, which granted the defendant the right to drill certain oil wells, was issued pursuant to a statute empowering the Commission to regulate oil production in Texas. Because of the detailed, comprehen-

sive regulatory scheme involved, the Court held that the district court should have abstained. The Court noted that if federal courts were available for review of the Commission's orders, "[d]elay, misunderstanding of local law, and needless federal conflict with the state policy" would inevitably result, *id.* at 327, 63 S.Ct. at 1104, and that oil production involved "basic problems of Texas policy," *id.* at 332, 63 S.Ct. at 1106. The Court described the Texas courts as "working partners with the Railroad Commission in the business of creating a regulatory system for the oil industry." *Id.* at 326, 63 S.Ct. at 1103. The Court concluded that such challenges should be left to the state courts to be handled as "one more item in a continuous series of adjustments." *Id.* at 332, 63 S.Ct. at 1106 (citation omitted).

▬▬▬ The Court has since described the doctrine of *Burford* abstention as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (quoting *Colorado River*). The Second Circuit has held that "the aim of *Burford* abstention is to avoid resolving difficult state law issues involving important public policies or avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration." *Bethphage Lutheran Serv., Inc. v. Weicker,* 965 F.2d 1239, 1243 (2d Cir.1992) (citations and internal quotation marks omitted).

Plaintiffs argue that *Burford* abstention is warranted because "the question of zoning needs is an issue of local land use policy and, therefore, is more properly considered in the

first instance by the state court." (*Hickerson* Pls.Mem. at 7, *Amsterdam* Pls.Mem. at 19 (quoting *Rose v. Village of Upper Nyack,* 669 F.Supp. 654, 656 (S.D.N.Y.1987)).) Plaintiffs contend that decision by a federal court would disrupt the City's efforts to establish a coherent zoning scheme for adult establishments.

*Burford* abstention cannot be justified in the cases before the Court. They are not challenges to discrete orders under a comprehensive regulatory scheme as in *Burford.* If decision of the federal constitutional claims becomes necessary, a federal court will not be required to resolve difficult questions of state law, because plaintiffs attack an entire scheme under the Constitution and the state courts will have already construed the resolution. Decision by a federal court also would not disrupt the City's efforts to establish a coherent policy. Indeed, it would make little sense to hold that federal court adjudication would unduly interfere with local policy when it is the local government defendants who brought the case to federal court, and who seek to keep it here. *Burford* abstention is not appropriate.

## 2. Remand—28 U.S.C. § 1441(c)

▬▬▬ Plaintiffs contend that 28 U.S.C. § 1441(c) authorizes remand of these actions in their entireties, including the federal claims. Section 1441(c) was amended in 1990 by the Judicial Improvements Act. Prior to its amendment, this section provided:

> Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

28 U.S.C. § 1441(c) (1988). The provision now reads as follows:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the

entire case may be removed and the district court may determine all issues therein, or in its discretion, may remand all matters in which State law predominates. 28 U.S.C. § 1441(c) (1994).

Plaintiffs rely on the last clause of the amended provision, which now authorizes remand of all "matters" in which state law predominates. Plaintiffs contend that Congress changed the language to permit district courts to remand an entire case that includes a federal claim when state law predominates in the case as a whole.

Plaintiffs' argument is not persuasive. First, section 1441(c) does not apply to these cases because plaintiffs' federal claims are not "separate and independent" from their state law claims. Prior to 1990, the Supreme Court held that "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951). The Court observed in *Carnegie–Mellon University v. Cohill* that federal claims are not separate and independent from pendent claims such as plaintiffs' state constitutional claims. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 354, 108 S.Ct. 614, 621, 98 L.Ed.2d 720 (1988). Congress left this "separate and independent" language unchanged when it amended the statute, and therefore the provision continues to be inapplicable to cases comprised of federal question claims and pendent state claims. *Borough of West Mifflin v. Lancaster,* 45 F.3d 780 (3d Cir.1995).

Second, even in those cases to which it applies, section 1441(c) does not authorize remand of federal claims. The sparse legislative history relating to the phrase on which plaintiffs rely provides little guidance except that it contains no indication of an intention to effect a radical change in federal question jurisdiction. It is not clear what Congress meant by "matters in which State law predominates." Congress was aware, however, of the federal courts' strong view of their obligation to exercise jurisdiction over federal claims properly before them, and it is extremely unlikely that Congress would have used such ambiguous language to accomplish so significant a change in federal jurisdiction. Some district court decisions, on which plaintiffs rely, have concluded that the revised provision does authorize remand of entire cases including federal claims. *Moralez v. Meat Cutters Local 539,* 778 F.Supp. 368 (E.D.Mich.1991); *Alexander by Alexander v. Goldome Credit Corp.,* 772 F.Supp. 1217 (M.D.Ala.1991); *Moore v. DeBiase,* 766 F.Supp. 1311 (D.N.J.1991); *Holland v. World Omni Leasing,* 764 F.Supp. 1442 (N.D.Ala. 1991); *Martin v. Drummond Coal Co.,* 756 F.Supp. 524 (N.D.Ala.1991). The better view, however, is that it does not. *See Buchner v. Federal Deposit Ins. Corp.,* 981 F.2d 816 (5th Cir.1993); *Kabealo v. Davis,* 829 F.Supp. 923 (S.D.Ohio 1993), *aff'd,* 72 F.3d 129 (6th Cir.1995). History, language, and logic compel the conclusion that under section 1441(c), the phrase "matters in which State law predominates" does not encompass federal claims.

Finally, even if I had discretion under this statute to remand plaintiffs' federal constitutional claims, I would not do so. Plaintiffs have raised claims under the First Amendment; their allegations that the resolution also violates the state constitution do not diminish the importance of the federal constitutional issues. A "matter" that includes a substantial federal constitutional claim cannot be a matter in which state law predominates.

3. Supplemental Jurisdiction—28 U.S.C. § 1367

The *Amsterdam* plaintiffs appear to contend that 28 U.S.C. § 1367 authorizes remand of the federal as well as the state law claims in these actions. Also enacted as part of the Judicial Improvements Act of 1990, section 1367 codifies the doctrines of pendent and ancillary jurisdiction, now called "supplemental" jurisdiction. Subsection (a) of the statute provides:

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (1994). Subsection (c) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a)" under certain circumstances. § 1367(c). Nothing in section 1367 authorizes a district court to dismiss or remand any claim over which the district court has original jurisdiction, including claims arising under the United States Constitution.

For all of the reasons stated above, plaintiffs' motions to remand the claims arising under the United States Constitution are denied.

*Motions for Intervention*

Forty-eight individuals and organizations move to intervene as defendants in these actions. In light of my decision to abstain, the motions for intervention are denied as premature, subject to renewal when these cases are reopened following the conclusion of the state proceedings and without prejudice to motions for intervention in the state proceedings.

*Conclusion*

For the foregoing reasons, the motions to remand are granted in part and denied in part. All claims arising under the Constitution of New York are remanded to the Supreme Court of New York County. All claims arising under the Constitution of the United States are stayed pending determination of the state claims in state court. The motions for intervention are denied without prejudice.

SO ORDERED.