Rachel HICKERSON, et al., Plaintiffs,

v.

The CITY OF NEW YORK,
et al., Defendants.

AMSTERDAM VIDEO INC.,
et al., Plaintiffs,

v.

The CITY OF NEW YORK,
et al., Defendants.

Nos. 96 Civ. 2203(MGC),
96 Civ. 2204(MGC).

United States District Court,
S.D. New York.

March 6, 1998.

New York Civil Liberties Union Foundation, New York City by Beth Haroules, Arthur N. Eisenberg, Norman Siegel, for Plaintiffs Rachel Hickerson, et al.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, New York City by Herald Price Fahringer, Erica T. Dubno, for Plaintiffs Amsterdam Video Inc., et al.

Jeffrey D. Friedlander, Acting Corporation Counsel of the City of New York, New York City by Albert Fredericks, Gabriel Taussig, Elizabeth Natrella, for Defendants.

Cravath, Swaine & Moore, New York City by Frederick A.O. Schwartz, Jr., David A. Stoll, for Intervenor Times Square Business Improvement Dist.

Dewey Ballantine LLP, New York City by Wayne A. Cross, for Intervenors Center for the Community Interest, et al.

## OPINION

CEDARBAUM, District Judge.

Plaintiffs in these two actions move for a temporary restraining order and preliminary injunction staying enforcement of Text Amendment N 950384 to the Zoning Resolution of the City of New York (the "Amended Zoning Resolution"), which regulates the zoning of "adult establishments."[1] The motion is denied for the reasons that follow.

■ In a case in which the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the issuance of a preliminary injunction requires the movant to demonstrate both irreparable harm and a likelihood of success on the merits. *NAACP v. Town of East Haven*, 70 F.3d 219, 223 (2d Cir.1995). This standard is particularly appropriate where a municipal regulation has been carefully examined by all of the courts of the state, including the highest court, and its validity has been upheld under a state constitution that provides broad protection for individual rights.

■ A violation of the First Amendment of the Constitution of the United States is itself irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373–74, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Accordingly, when an injunction is sought to protect First Amendment rights, likelihood of success on the merits and irreparable harm merge into a single threshold requirement. Preliminary injunctive relief is not warranted in this case because plaintiffs have not shown likelihood of success on the merits.

## BACKGROUND

Plaintiffs in the Hickerson action are Manhattan and Bronx residents who allege that they regularly patronize adult establishments. They claim that the Amended Zoning Resolution will prevent them from continuing to patronize the adult establishments they currently frequent, and will reduce significantly the number of alternative establishments available to them. Plaintiffs in the Amsterdam action are owners and operators of business establishments which they allege are adult establishments as defined by the Amended Zoning Resolution. They allege that the resolution will force them to terminate the operation of their businesses and thereby cause them significant economic harm.

Both groups of plaintiffs originally sued in the Supreme Court for New York County, asserting claims of violation of freedom of expression under the New York Constitution and the Constitution of the United States. Defendants, the City of New York and three city officials, removed the actions to this Court because of the federal questions presented by the complaints. Plaintiffs promptly sought to return to the state court by moving to remand the actions in their entire-

---

1. Complete descriptions of the Amended Zoning Resolution can be found in this Court's prior opinion, *Hickerson v. City of New York*, 932 F.Supp. 550 (S.D.N.Y.1996), and in *Stringfellow's of New York, Ltd. v. City of New York*, 171 Misc.2d 376, 653 N.Y.S.2d 801 (N.Y.Sup. 1996), *aff'd*, 241 A.D.2d 360, 663 N.Y.S.2d 812 (1st Dep't 1997), *aff'd*, 91 N.Y.2d 382, 671 N.Y.S.2d 406, 694 N.E.2d 407 (1998).

ty. On June 27, 1996, plaintiffs' motions to remand were granted in part and denied in part. Under the doctrine of abstention of *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), all of plaintiffs' state claims were remanded to New York County Supreme Court, while the federal claims were stayed pending resolution of the state claims. *Hickerson v. City of New York*, 932 F.Supp. 550 (S.D.N.Y. 1996).

### State Court Proceedings

After remand of the state constitutional claims, defendants moved for summary judgment on those claims. Before defendants filed their summary judgment motion, plaintiffs conducted some discovery, including a deposition of Marilyn Mammano, a staff person at the Department of City Planning.

In support of summary judgment, defendants submitted a number of affidavits and virtually the entire legislative record of the Amended Zoning Resolution, including various studies and reports on adult businesses, the records of public hearings related to the Amended Zoning Resolution, and maps purporting to show permissible locations for the operation of adult establishments under the law. In opposition to the defendants' motion, plaintiffs submitted numerous affidavits and legal memoranda, including an extensive affidavit from a land use expert, R. Bruce McLaughlin. McLaughlin's affidavit addressed the availability of alternative sites for the businesses required by the Amended Zoning Resolution to close or relocate. It appears from McLaughlin's affidavit that he had been studying the matter for many months. According to the affidavit, McLaughlin personally visited every one of the more than 500 sites identified by the defendants as available for adult establishments. Moreover, documents attached to the affidavit included an analysis prepared in August 1995, while the Amended Zoning Resolution was under consideration and approximately one year before defendants moved for summary judgment.

On October 23, 1996, Justice Marylin G. Diamond of the New York County Supreme Court granted defendants' motion for summary judgment on plaintiffs' state constitutional claims. *Stringfellow's of New York, Ltd. v. City of New York*, 171 Misc.2d 376, 653 N.Y.S.2d 801 (N.Y.Sup.1996), *aff'd*, 241 A.D.2d 360, 663 N.Y.S.2d 812 (1st Dep't 1997), *aff'd*, 91 N.Y.2d 382, 694 N.E.2d 407, 671 N.Y.S.2d 406 (1998). Justice Diamond found that the Amended Zoning Resolution was not an attempt to regulate speech but rather was motivated by concerns other than those related to speech, and, in particular, by a reasonable belief that adult establishments produce undesirable secondary effects such as neighborhood deterioration, crime and decreased property values. Justice Diamond found that, in enacting the Amended Zoning Resolution, the City reasonably relied on a number of studies undertaken in New York City and elsewhere concerning the secondary effects of adult establishments. She also found that the Amended Zoning Resolution is no broader than is necessary to address the negative effects associated with adult establishments.

Finally, Justice Diamond found that the Amended Zoning Resolution provides ample space for adult establishments, leaving almost 4% of New York City's total land area available for use by such establishments. She stated that defendants had "more than sufficiently demonstrated that the permissible areas are suitable for commercial enterprise and are large enough to accommodate adult establishments which must relocate. While plaintiffs have labored mightily to create issues of fact, none exist." *Id.* 653 N.Y.S.2d at 814. This conclusion was based in part on the specific analysis provided in the affidavit of William Bernstein, First Deputy Executive Director of the Department of City Planning, and other affidavits submitted by the defendants, who represented that approximately 500 potential relocation sites existed in New York City. She also considered McLaughlin's affidavit, which concluded that the actual number of available alternative sites was much smaller than the 500 or so claimed by the defendants. Justice Diamond found that McLaughlin's methodology was "fatally flawed" because it unjustifiably eliminated a number of sites based on factors that McLaughlin claimed make certain sites unavailable. *Id.* at 812. These factors included

the undeveloped state of the proposed site, suitability for some "generic commercial enterprise," presence of a long-term lessee, current use as a parking lot and lease clauses prohibiting adult uses. Noting that such factors have been repeatedly rejected by state and federal courts, Justice Diamond found that McLaughlin and plaintiffs failed to rebut defendants' evidence that ample sites were available for the relocation of adult establishments. In so doing, she stated:

> Although 10 months have passed since McLaughlin states he obtained zoning maps maintained by the DCP, he claims that he cannot estimate the acreage size of the permissible zones because of lack of time. He also fails to offer his own number of potential relocation sites under either the City's methodology or his own methodology to rebut the City's calculation.

*Id.* Justice Diamond rejected plaintiffs' contention that the defendants' estimate of 500 sites was invalid because it was generated by computer and not by inspection of the actual sites. She determined from the deposition testimony of Marilyn Mammano that the defendants' computation of alternative sites was properly calculated, based on conservative measurements, and, while not "site specific," was an acceptable estimate of the potential number of sites in the permissible areas. *Id.* at 812–813.

Finally, Justice Diamond rejected plaintiffs' request for additional discovery, because the administrative record before the court was "thorough, extensive and comprehensive." *Id.* at 813.

The decision of the New York County Supreme Court was unanimously affirmed by both the Appellate Division, 663 N.Y.S.2d 812 (1st Dep't 1997), and the New York Court of Appeals, 91 N.Y.2d 382, 694 N.E.2d 407, 671 N.Y.S.2d 406 (1998). Holding that the state constitutional standards governing regulations such as the Amended Zoning. Resolution are substantially the same as the federal standards, the Court of Appeals relied on both state and federal authority to hold that the Amended Zoning Resolution had a purpose unrelated to speech, imposed restrictions no broader than

necessary to implement the legitimate concerns of the legislature, and provided for reasonable alternative avenues of communication. Thus, after a thorough review of the record below, the Court of Appeals held that the resolution did not violate the state constitution and could be enforced by defendants. 694 N.E.2d at 420, 671 N.Y.S.2d at 419.

On February 26, 1998, plaintiffs returned to this Court seeking a temporary restraining order and a preliminary injunction against the enforcement of the Amended Zoning Resolution.

## DISCUSSION

Defendants contend that the doctrine of collateral estoppel precludes plaintiffs from relitigating in this Court the same factual issues that have already been tried and decided in the state court. The preclusive effect of a state court determination in a subsequent federal proceeding is governed by the rules of the state in which the prior action was tried. 28 U.S.C. § 1738; *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *State of New York v. Sokol,* 113 F.3d 303, 306 (2d Cir.1997). Under New York law, a factual issue determined in a prior litigation is given preclusive effect if the issue to be precluded was necessarily decided in the prior litigation and the party opposing preclusion had a full and fair opportunity to litigate the issue. *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487 (1984); *Sokol,* 113 F.3d at 306. Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party ... and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Where factual determinations by a state court are at issue, collateral estoppel also "promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen,* 449 U.S. at 95–96.

The First Amendment standard applicable to a content-neutral zoning ordinance

regulating the location of adult entertainment businesses was established by the Supreme Court of the United States in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Under *Renton*, zoning ordinances of the kind at issue in these actions are content neutral time, place, and manner regulations if the legislative purpose is other than the restriction of speech. According to *Renton*, such a content neutral ordinance is permissible if it is "designed to serve a substantial governmental interest" and "allows for reasonable alternative avenues of communication." *Id.*, 475 U.S. at 50.

Each of the inquiries set out by the Supreme Court in *Renton* —the legislative purpose, whether the ordinance is designed to advance a substantial government interest, and the availability of reasonable alternative avenues of communication—is a factual issue that has been litigated by plaintiffs and decided by the Supreme Court for New York County and affirmed by both the Appellate Division and the New York Court of Appeals. After extensive submissions by the parties, Justice Diamond held that (1) the City acted in response to concerns regarding the secondary effects of adult establishments; (2) the City reasonably relied on a number of studies to conclude that adult businesses produce adverse secondary effects; (3) the Amended Zoning Resolution is "no broader than necessary" to prevent those adverse effects; and (4) defendants had "more than sufficiently demonstrated that the permissible areas" for adult establishments remaining in the City "are suitable for commercial enterprise and are large enough to accommodate adult establishments which must relocate." 653 N.Y.S.2d at 803, 808, 809, 814.

Each of those inquiries was necessarily decided in the state court proceedings, and plaintiffs had a full and fair opportunity to litigate the issues in the state courts. Accordingly, if the doctrine applies, those issues are precluded from further litigation in this Court under the doctrine of collateral estoppel, now known as issue preclusion.

Plaintiffs offer no persuasive reason to be permitted to relitigate in this Court the very same issues they litigated in the state courts in order to persuade this Court to reach a different factual result. Plaintiffs contend that under *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), they reserved their rights to relitigate these issues in federal court. The *England* case preserves a plaintiff's right to relitigate in federal court all issues related to the federal issues when the federal court is plaintiff's chosen forum, and plaintiff is forced, over its objection, to litigate those issues in state court because a federal judge sua sponte decides to abstain under *Pullman*. Here, however, plaintiffs' chosen forum was emphatically the state court. After plaintiffs filed these actions in state court, defendants removed them to this Court. Plaintiffs promptly moved to remand all their claims to the state court, and fought vigorously to return to their chosen forum, the state court. *England* does not govern or prohibit issue preclusion in these actions.

■ Plaintiffs also contend that they did not get a full and fair opportunity to litigate in state court. Under the New York law of issue preclusion, the party seeking preclusion has the burden of demonstrating the identity of the issues and that the issues were actually and necessarily decided in the prior litigation. The party opposing collateral estoppel has the burden of establishing the absence of a full and fair opportunity to litigate the issues in the prior action. *Sokol*, 113 F.3d at 306. A determination of whether a full and fair opportunity to litigate was provided requires consideration of the "realities" of the prior litigation. The factors to be considered include: (1) the nature of the forum and the importance of the claim in the prior litigation; (2) the incentive to litigate and the actual extent of litigation; (3) the competence and experience of counsel; and (4) the foreseeability of future litigation. *Ryan*, 478 N.Y.S.2d at 827, 467 N.E.2d 487.

Plaintiffs complain that the actions were decided on summary judgment and after inadequate opportunity for discovery. Plaintiffs contend that their expert was not given adequate time to prepare his analysis of the purported alternative sites. Plaintiffs also argue that they were denied access to "critical information" such as how maps of permis-

sible relocation areas were generated by the City. Finally, plaintiffs argue that they were not permitted to file a surreply after the City introduced new evidence and arguments on reply relating to the availability and suitability of potential sites.

 The mere fact that a case is resolved on summary judgment and does not proceed to trial does not deny a party a full and fair opportunity to litigate. *See, e.g., Tobias v. First City National Bank and Trust Co.,* 709 F.Supp. 1266, 1270–1271 (S.D.N.Y.1989). Moreover, the "full and fair opportunity" requirement does not entitle a party to unlimited discovery. Indeed, state court proceedings permitting no discovery at all can be entitled to preclusive effect in federal court. *McBride v. Bratton,* 1996 WL 636075, at *3 (S.D.N.Y. November 4, 1996), *aff'd,* 122 F.3d 1056, 1997 WL 383521 (2d Cir.1997). It is undisputed that plaintiffs viewed the New York courts as the main forum and the New York Constitution as the principal basis for their extremely important effort to prevent New York City from requiring them to close and move their businesses. Plaintiffs were represented by experienced and highly competent counsel. They were permitted some discovery, and had a full opportunity to press any procedural grievances in addition to their substantive claims in the state courts.

Plaintiffs were permitted to take the deposition of Marilyn Mammano, designated by defendants as the staff person familiar with the calculation made by defendants with respect to available alternative sites. Plaintiffs complain that Ms. Mammano was repeatedly directed not to answer questions, including questions related to the methodology of calculating the number of alternative sites and the suitability of alternative sites. Plaintiffs also complain that their requests for documents on these topics—those reviewed by Ms. Mammano before the deposition, and other documents—were denied. On the other hand, plaintiffs themselves point to a great deal of information from the Mammano deposition that they used to support their position in the state court, including testimony relating to the degree of defendant's investigation of alternative sites.

The New York courts themselves addressed plaintiffs' demands for discovery. Justice Diamond noted that plaintiffs' expert had zoning maps for 10 months before he made his submission in opposition to defendants' motion for summary, judgment, and that with those maps, he could have estimated the acreage size of the permissible zones. Nevertheless, he failed to calculate the number of potential relocation sites under his methodology. She also expressly addressed plaintiffs' claim that additional discovery was needed, "in view of the present administrative record that this court finds to be thorough, extensive and comprehensive." 653 N.Y.S.2d at 813. Moreover, the New York Court of Appeals noted that before issuing a decision, the New York County Supreme Court ordered defendants to respond to interrogatories served by the Hickerson plaintiffs, to provide maps of alternative sites that eliminated encumbered areas, and to produce Ms. Mammano for deposition. The record before Justice Diamond totaled more than 10,000 pages, including pleadings, affidavits, exhibits and briefs. 671 N.Y.S.2d at 412, 694 N.E.2d at 413.

In sum, plaintiffs have not shown that they did not have a full and fair opportunity to litigate ably and vigorously in the state courts the very factual issues that are dispositive of their claim under the First Amendment. Accordingly, the factual findings of the New York County Supreme Court as affirmed by the Appellate Division and the Court of Appeals are entitled to preclusive effect.

It should be noted that the zoning resolution attacked in this case under the First Amendment is before the Second Circuit in the case of *Buzzetti v. City of New York,* 1997 WL 164284 (S.D.N.Y. April 8, 1997). That case has been argued before the Second Circuit and is pending decision in that court.

This order denying a preliminary injunction is stayed until the close of court business on Monday, March 9, 1998 so that plaintiffs can promptly seek from the Second Circuit a stay pending appeal.