The CITY OF NEW ROCHELLE,
Plaintiff,

v.

The TOWN OF MAMARONECK and
The Town Board of the Town of
Mamaroneck, Defendants.

No. 00 Civ. 3893(CM).

United States District Court,
S.D. New York.

Aug. 24, 2000.

Michael D. Zarin, Zarin & Steinmetz, White Plains, NY, for plaintiff.

Robert A. Spolzino, Wilson, Elser, Moskowitz, Edelman & Dicker, White Plains, NY, for defendants.

AMENDED MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION TO REMAND THE STATE LAW CLAIMS TO NEW YORK SUPREME COURT

McMAHON, District Judge.

## I. SUMMARY AND BACKGROUND

For some months, two shore communities in lower Westchester County have

been embroiled in debate over a proposal to build an IKEA, the Swedish home furnishings superstore, on a 16.4–acre area on the eastern border of the City of New Rochelle, New York. Within New Rochelle, the matter has generated an extraordinary amount of dissension. City officials view the proposal as vital to urban redevelopment, while residents of the stable working-class neighborhood that would be destroyed if the City acquired the property needed for construction of the store oppose the project. But the highly publicized debate is not confined to the City's borders. Fearing that the store would create serious traffic congestion on its nearby streets, the adjacent Town of Mamaroneck has actively opposed the IKEA project.[1] When it became clear that New Rochelle intended to proceed with condemnation of the property, Mamaroneck's Town Board passed an ordinance, known as the Local Impact Review Law ("Local Law"), which requires that its Town Board review the impact of certain major development projects in an area outside of, but adjacent to, Mamaroneck. The Law provides that a permit must be granted upon a showing that the impact of the development on the Town will be mitigated.[2]

New Rochelle commenced an action in the New York State Supreme Court for declaratory and injunctive relief and damages as a result of the passage of the Local Law. It asserts several constitutional and statutory claims under both Federal and State law. Defendants timely removed the action to this Court pursuant to 28 U.S.C. § 1441(b), on the ground that this Court has original jurisdiction over the federal claims in suit. Defendants now move to dismiss the complaint on various substantive grounds, including lack of standing, lack of ripeness and failure to state a federal claim. Plaintiff opposes that motion and has cross-moved to remand the action to state court.

For the reasons stated below, Defendants' motion is granted in part and denied in part. The state law claims are remanded to New York State Supreme Court. Plaintiff's remaining federal claim is stayed pending resolution of the issues of New York statutory and constitutional law that are paramount in this very local matter.

## II. MAMARONECK'S MOTION TO DISMISS

New Rochelle commenced this case as a combined action and special proceeding in the Supreme Court of the State of New York in the County of Westchester. The notice of petition, summons and complaint asserted eight claims: (1) violation of the New York State Constitution; (2) violation of the Municipal Home Rule Law, art. 2, § 10; (3) preemption of the Local Law by the New York State Environmental Quality Review Act ("SEQRA"); (4) violation of the Commerce Clause of the United States Constitution; (5) violation of the Due Process Clause; (6) violation of the Equal Protection Clause; (7) damages and attorney's feels pursuant to 42 U.S.C. § 1983

---

1. *See* Elsa Brenner, "Resistence to Ikea," *N.Y. Times,* Nov. 7, 1999 at WC4 (discussing Mamaroneck officials' concerns about the unpredictability of traffic patterns on I–95 and the likelihood that residents of Scarsdale and White Plains would use local roads to access the proposed IKEA site).

2. The purpose of the law is stated as follows: Major development projects in areas that abut, adjoin, or are adjacent to the Town of Mamaroneck can result in substantial impacts to the streets and areas that surround them within the Town of Mamaroneck, including, but not limited to, impacts upon natural resources, noise, traffic, cultural or aesthetic resources, existing patterns of population concentration, and community or neighborhood character. The purpose of this chapter is to address those impacts and thereby provides for the proper care, management and use of the streets and highways of the Town of Mamaroneck, and the protection, safety, health and well-being of persons and property therein. This chapter is intended to supersede any provision of the Town Law that is inconsistent herewith. Mamaroneck, Local Law No. 4–2000, § 130–2.

and § 1988; and (8) violation of SEQRA. Defendant Mamaroneck removed the case to this Court by notice of removal on May 23, 2000 on the ground that this Court would have had original jurisdiction over the federal claims asserted in the complaint under 28 U.S.C. § 1331 and § 1343 on the basis that Plaintiff alleged violations of its federal civil rights. Because all of the state-law-based claims arise out of the same transaction and common nucleus of operative facts and circumstances, this Court has discretionary authority to exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a). (*See* discussion at Section III, A., *infra.*)

Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure prior to serving their answer. They asserted three grounds: (1) Plaintiff lacks standing to raise the claims asserted in complaint; (2) the claims asserted in the complaint are not ripe for judicial review; and (3) Plaintiff fails to state any federal claims on which relief can be granted.

## A. *Standard*

In reviewing a motion to dismiss, a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). A complaint may not be dismissed for failure to state a claim unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citation omitted). Moreover, the court may only consider facts alleged in the complaint or in documents attached to the complaint or exhibits incorporated therein by reference. *See Black Radio Network, Inc. v. NYNEX Corp.*, 44 F.Supp.2d 565, 573 (S.D.N.Y.1999).

I address Defendants' justiciability arguments only to the extent they relate to the federal claims in the case.[3]

## B. *Standing*

### 1. *Article III Standing*

New Rochelle has standing to bring this suit.

"Whether a claimant has standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" *In re Gucci*, 126 F.3d 380, 387–88 (2d Cir.1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)), *cert. denied*, 520 U.S. 1196, 117 S.Ct. 1552, 137 L.Ed.2d 701 (1997). To establish standing to bring a complaint, a plaintiff must allege a personal stake in the outcome of the case and a "distinct and palpable" injury by way of "specific, concrete facts." *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). Mamaroneck argues that, because the Local Law imposes an environmental review requirement on "developers" and "development," but imposes no obligation on any municipal entities, including New Rochelle, New Rochelle lacks standing to challenge the law. Mamaroneck is wrong.

Contrary to Mamaroneck's contention, the Local Law does not limit its provisions to "developers" or "development," but rather applies to any "project" that is "undertaken" that "abuts, adjoins or is adjacent to a Town street." (Local Law at §§ 130–2, 130–3.) Nothing in the plain language of the statute limits its applicability to "developers." Nor does the Local Law explicitly exclude municipalities or municipally-sponsored projects from the permit requirements. It is thus reasonable to conclude that New Rochelle's current undertaking of a major

---

3. For example, since I am remanding all state law claims to the court where they belong, I need not reach the issue of SEQRA standing under *Sunrise Dev., Inc. v. Town of Hunting-* *ton*, 62 F.Supp.2d 762 (E.D.N.Y.1999) and *Glen Head Glenwood Landing Civic Council v. Town of Oyster Bay*, 88 A.D.2d 484, 453 N.Y.S.2d 732 (2d Dept.1982).

urban renewal project within the Fifth Avenue Redevelopment Area involving the "physical alteration of 10 acres or more" would fall well within the Defendants' new Local Law. (Complaint ¶¶ 13–19.) I therefore find that New Rochelle has sufficiently alleged an "injury in fact" or such a personal stake in the outcome of the litigation as to warrant invocation of the Court's jurisdiction. *See United States v. Cambio Exacto,* 166 F.3d 522, 526 (2d Cir.1999).

New Rochelle shares a 3.5 mile border with Mamaroneck. The proposed Fifth Avenue Urban Renewal Area abuts Mamaroneck. (Complaint ¶ 3). New Rochelle is in the midst of a comprehensive environmental review and other deliberations involving the Urban Renewal Area and the adoption of an Urban Renewal Plan. (*Id.* ¶¶ 113–33.) Indeed, Defendants have on several occasions conceded that the passage of the Local Law and its timing was directed at forcing New Rochelle to abandon its redevelopment efforts in the Fifth Avenue Area, specifically, the assemblage of property necessary for the development of the IKEA site. (*Id.* ¶¶ 3–4, 21–22, 33–34, 95–96.) For example, the Local Law was adopted after New Rochelle rejected Mamaroneck's request that Mamaroneck be granted "equal approver" status over the project under SEQRA. (*Id.* ¶¶ 32–35.) New Rochelle clearly has a sufficient legal interest and direct stake in being able to undertake redevelopment projects within its own borders without subjecting itself to the independent jurisdiction of the Town of Mamaroneck. And as Mamaroneck's efforts were specifically aimed at stalling New Rochelle's redevelopment plans, it is disingenuous, at best, for Mamaroneck to claim that New Rochelle is "attempting to assert the rights that actually belong, if at all, to the developer or owner of property that may be subject to the Local Law." (Def's Mem. at 7.)

Aside from the Urban Renewal Plan, New Rochelle also alleges that it owns roads and other properties within the area affected by the Local Law. Even if the law were not aimed specifically at the IKEA project (which it clearly is), New Rochelle would have sufficient allegations of injury to its own real property to confer standing upon it in this matter.

Because I have held that New Rochelle has standing under Article III to bring suit, I need not address whether it would also have third-party standing to represent the interests of developers and builders not party to this suit. *See Singleton v. Wulff,* 428 U.S. 106, 113, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (discussing the circumstances under which plaintiff's standing might be predicated on the rights of others).

### 2. *Ripeness*

Defendants further contend that, even if Plaintiff has standing to challenge the Local Law, New Rochelle's claims are speculative and premature because neither New Rochelle nor any developer has made an application under the Local Law. New Rochelle alleges that it suffered impairment of its state and federal rights at the moment the law was passed. To the extent that Count V of the complaint can be read to allege a taking of New Rochelle's real property in violation of the Due Process Clause, Defendants are correct; that claim is not ripe for review. All other claims, however, are ripe.

The doctrines of ripeness and standing are closely related. *See Warth v. Seldin,* 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Ripeness requires that, in addition to the existence of a case or controversy between the parties, the "immediacy and reality" of the dispute support judicial intervention. *Marchi v. Board of Cooperative Educational Services of Albany,* 173 F.3d 469 (2d Cir.1999). A court is precluded from entertaining claims based on "contingent future events" that may not occur as anticipated or at all. *See Thomas v. City of New York,* 143 F.3d 31 (2d Cir.1998); *Honess 52 Corp. v. Town of Fishkill,* 1

F.Supp.2d 294 (S.D.N.Y.1998). But a plaintiff need not "await the consummation of threatened injury to obtain preventative relief." *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir.1994). If the "perceived threat due to the putatively illegal conduct of the [defendants] is sufficiently real and immediate to constitute an existing controversy", the claim is ripe. *Id.* (citing *Blum v. Yaretsky*, 457 U.S. 991, 1000, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)).

 In determining ripeness, the court must balance the readiness of the issues for judicial resolution against the hardships that would result from withholding consideration. *See Abbott Laboratories, Inc. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The readiness or fitness inquiry "addresses essentially prudential concerns regarding the propriety of judicial intervention before a fuller factual record has been developed." *Blue Sky Entertainment, Inc. v. Town of Gardiner*, 711 F.Supp. 678, 687 (N.D.N.Y. 1989) (internal quotation omitted).

 New Rochelle alleges under Counts I and II that Defendants cannot enforce the Local Law because it impinges on New Rochelle's authority to regulate land use within its borders, as guaranteed in the New York State Constitution and the New York State Municipal Home Rule Law. (Complaint, ¶¶ 44–57.) In Count III, Plaintiff alleges that the Local Law is preempted by the New York State Environmental Quality Review Act ("SEQRA"). These claims represent a facial challenge to the Local Law and Mamaroneck's authority to assert jurisdiction over development in New Rochelle. They are pure questions of law and are ripe for adjudication.

 In Count IV, New Rochelle alleges that adoption of the Local Law itself was a "final action" that had the effect of impeding business and development in the town in violation of the Commerce Clause of the United States Constitution, (Complaint ¶ 80), and that the Local Law "im-poses regulation that either bars businesses and developments from locating outside the Town of Mamaroneck and/or imposes an extra level of regulation with fees and costs upon such projects, [the Local Law] acts as a disincentive against those projects desiring to located [sic] within the City of New Rochelle." (Complaint ¶ 81.) Because this claim addresses the law on its face, and not the law as applied, this claim is also ripe.

 Plaintiff alleges in Count V that the adoption of the Local Law violates the Due Process Clause by depriving "New Rochelle and its residents of their property rights and interests without a full and fair opportunity to be heard and without payment of just compensation," and also that the Law allows Mamaroneck to "acquire [New Rochelle's] property without due process of law or payment of just compensation." (Complaint ¶ 87.) Defendants argue that this claim is premature because Mamaroneck has not yet issued a decision under the Local Law, and that therefore any takings claim is unripe. (Indeed, no party has yet to make an application for approval under the Local Law.)

 To the extent that Count V embraces such a claim, Defendants are correct. A federal court may review a land use decision by a municipal agency only if that agency has reached a "final decision" under the applicable ordinance. *See Southview Assocs. v. Bongartz*, 980 F.2d 84, 95–97 (2d Cir.1992). This finality requirement can only be excused if the plaintiff demonstrates that pursuing the municipal procedures would be futile. *Id.* at 98–99 n. 8. Thus, to the extent Count V alleges a taking of New Rochelle's real property, Plaintiff's claim is not yet ripe for adjudication.

 However, Count V includes a novel allegation under the Due Process Clause: Plaintiff alleges that the law—on its face—deprives New Rochelle of an alleged "property interest" in its municipal power to grant or deny development per-

mits within its own municipal borders. Count V also includes the allegation that the law is "impermissibly and unconstitutionally vague." Because these claims present a facial challenge to the validity of the statute, I find them ripe for review. (Complaint ¶ 88.)

 Count VI alleges an Equal Protection Clause violation on the grounds that the Local Law inhibits new construction in the City of New Rochelle, shifting development away from New Rochelle and also creates benefits for businesses in Mamaroneck by stifling competition. (Complaint ¶ 91.) As a result of the deprivation of these rights, New Rochelle alleges that it suffers or risks suffering ongoing economic damages. This claim alleges that the law is discriminatory on its face. It therefore meets the ripeness requirements.

I further find that withholding judicial determination at this time will cause significant hardship to the Plaintiff by delaying—perhaps indefinitely—Plaintiff's ability to proceed with the Urban Redevelopment Plan. This constitutes sufficient harm that further delay of adjudication would impair New Rochelle's rights to judicial redress. *See Blue Sky Entertainment,* 711 F.Supp. at 687.

I now turn to the merits of Plaintiff's federal claims.

## C. *The Substantive Federal Claims*

### 1. *Count IV: Commerce Clause*

Mamaroneck moves to dismiss Count IV on the ground that the Local Law is a local quality of life ordinance that has no identifiable impact on interstate commerce. New Rochelle counters that the complaint pleads a Commerce Clause violation by alleging that the Local Law will "[i]mpede the free flow of commerce and discriminate against businesses or developments desiring to locate in the City, thus causing it economic loss." (Complaint ¶ 82.) New Rochelle also contends that its allegation that the "Local Law jeopardizes any major development in New Rochelle that borders Mamaroneck, specifically the Urban Renewal Project, provides a disincentive for any developer to come into New Rochelle, and has the potential of depressing the City's economy and harming the well-being of its residents," states a claim for violation of the Commerce Clause. (*Id.* at ¶ 42.)

 The Commerce Clause provides that "[t]he Congress shall have Power ... To regulate Commerce ... among the several States...." U.S. Const., Art. I, § 8, cl. 3. The so-called dormant Commerce Clause, the scope of which has been defined through judicial opinions, forbids States and their subdivisions to regulate interstate commerce. The Supreme Court has generally distinguished between two types of impermissible state or local regulations: (1) those that discriminate against out-of-state interests; and (2) those that do not discriminate against out-of-state interests, but have an incidental effect on interstate commerce. The first category of laws receive strict scrutiny, and are virtually *per se* violations of the Commerce Clause. *See Oregon Waste Sys., Inc. v. Department of Envtl. Quality,* 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). In analyzing the second category of laws, courts balance the burden imposed on interstate commerce against the benefits provided to local interests. *See Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). Under this balancing test, the law will be held valid unless the burden on interstate commerce is clearly excessive in relation to the putative local benefits. *See id. See also C & A Carbone, Inc. v. Clarkstown,* 511 U.S. 383, 402, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994) (O'Connor, J. concurring) (internal citations omitted). But the Court has recognized that the line between *per se* violations and those that require a balancing of considerations is not always clear. Thus, the critical consideration in determining whether a statute is a constitutionally permissible regulation "is the overall effect of the statute on both local and interstate

activity." *Brown–Forman Distillers Corp. v. New York State Liquor Authority,* 476 U.S. 573, 579, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986).

Turning first to whether the complaint alleges a per se violation of the Commerce Clause, I conclude that it does not. Mamaroneck asserts that the Local Law was enacted solely to protect the environment and living conditions in and around Mamaroneck. New Rochelle counters that the Law was intended and designed to impede the Urban Redevelopment Project. The complaint alleges discrimination against non-local, i.e. non-Mamaroneck, commerce. It does not, however, allege discrimination against out-of-state interests. And while local protectionist measures have been found to violate the Commerce Clause, it is the effect of such laws on interstate—not intrastate—commerce that lies at the heart of the Court's analysis. I thus find that the Plaintiff has failed to state a claim that the Local Law explicitly discriminates against out-of state interests or interstate commerce. Discrimination against the interests of another municipality within the State of New York may raise issues under the New York State Constitution, but it is not a *per se* violation of the Commerce Clause.

A local ordinance that discriminates against non-local interests but does not explicitly discriminate against out-of-state economic interests may nonetheless implicate the dormant commerce clause. Legislation relating to "health and safety" and to the "protection of the environment and conservation of natural resources" is a legitimate exercise of state and local authority. *Gary D. Peake Excavating Inc. v. Town Bd. of Hancock,* 93 F.3d 68 (2d Cir.1996). Defendants contend that, because the Local Law concerns itself exclusively with environmental, health and safety matters, and because the benefits of the law redound to the locality and local residents, it cannot be said to violate the Commerce Clause. However, if there is any effect on interstate commerce, no matter how incidental, I am required to weigh the magnitude of the effect on interstate commerce against the local benefits. *See Pike,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174.

*Pike* states that "[i]f a legitimate local purpose is found, then the question becomes one of degree," and "the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted with a lesser impact on interstate activities." 397 U.S. at 847, 90 S.Ct. 1517. At this early stage in the litigation, I have no evidence from which I could determine the effect on interstate commerce, and thus nothing against which to weigh Mamaroneck's clear interest in protecting the safety and well-being of its residents.

Because the Local Law is an economically protectionist law, New Rochelle argues that it represents an impediment to the free flow of goods in interstate commerce.[4] I find Plaintiff's argument that the Local Law has an incidental effect on interstate commerce, because many of the builders and contractors who would be engaged in construction in the redevelopment zone come from out of state and use products that travel in interstate commerce, to be insufficient. This sort of "house that Jack built" argument is far too attenuated to support a conclusion of interference in interstate commerce and fails as a matter of law. (Indeed, accepting such an argument would be to accept that every nearly every municipal zoning regulation is a Commerce Clause violation.)

However, the Local Law may have other potential effects on interstate commerce. For example, discovery might reveal that the law was, in fact, aimed solely at pre-

---

4. I note that New Rochelle crafted its complaint rather inartfully, alleging under the Commerce Clause that the law discriminates "against businesses or developments" rather than referring specifically to business engaged in interstate commerce. (Complaint ¶ 82.)

venting national or international retail "superstores" from being built in the area.[5] Or it might be revealed that Mamaroneck was looking to keep out streams of shoppers from across the Connecticut border, which lies just ten miles from the redevelopment area. Given that I am constrained to analyze the effect on commerce under the *Pike* balancing test, it would be premature to dismiss Count IV prior to discovery. *But see Great Atlantic & Pacific Tea Co. v. Town of East Hampton,* 997 F.Supp. 340, 351 (E.D.N.Y.1998) (dismissing dormant Commerce Clause claim brought against town that enacted anti-superstore ordinance but granting leave to replead.)

I therefore deny Defendants' motion to dismiss the Commerce Clause claim.

2. *Counts V and VII: Denial of Due Process and Equal Protection under the Fifth and Fourteenth Amendments*

Counts V and VI allege due process and equal protection violations. Plaintiff's due process claim consists of three grounds: (1) the Local Law constitutes a taking of New Rochelle's property without due process; (2) the Local Law, on its face, represents an unlawful taking of New Rochelle's property interest in its own permitting process; and (3) the Local Law is unconstitutionally vague.[6] New Rochelle's equal protection claim alleges that the Local Law "will inhibit new construction in the City of New Rochelle, and shift development away from the City and to [Mamaroneck], as well as cause economic benefit to existing businesses within [Mamaroneck] by stifling competition." (Complaint ¶ 91.). Additionally, Plaintiff argues that the Local Law creates a statutory classification insofar as it applies to those properties that fall within the Local Law's parameters: (a) "the construction of 250 or more residential units," (b) "the physical alteration of ten acres or more," (c) "the construction of a facility with more than 100,000 square feet," of (d) a project that "involves parking for more than 1,000 vehicles," provided (e) said development project "abuts, adjoins or is adjacent to a Town street within or upon the border of the Town of Mamaroneck...." (Complaint ¶ 36.) (citing Local law No. 4–2000.) Plaintiff contends that the Law is unconstitutional because such classification—which treats different property owners differently—lacks any rational justification.

■ The threshold issue, which neither party has addressed, is whether New Rochelle, a municipal corporation organized under the laws of New York State, can maintain a suit challenging the Local Law on the basis that its rights to due process and equal protection were infringed.

**5.** *See* Justin Shoemaker, *The Smalling of America?: Growth Management Statutes and the Dormant Commerce Clause* 48 Duke L.J. 891 (1999) (discussing susceptibility of state anti-super-store statutes to dormant Commerce Clause challenges).

**6.** The complaint alleges, *inter alia,* the following:

85. Local Law No. 4–200 impermissibly imposes an assessment or tax payable to the Town of Mamaroneck on businesses desiring to locate in the City of New Rochelle without any reciprocal benefit from the Town in violation of the Due Process Clause of the United States Constitution.

86. *By authorizing the Town of Mamaroneck to determine the use of property within the City of New Rochelle's border, Local Law no. 4–2000 allows the Town to acquire the City's property without due process of law or payment of just compensation in violation of the Dues Process Clause....* (emphasis added)

87. Local Law No. 4–2000 thus deprives the City of New Rochelle and its residents of their property rights and interests without a full and fair opportunity to be heard and without payment of just compensation in violation of the Due Process Clause....

88. Local Law No. 4–2000 is also impermissibly and unconstitutionally vague, because it requires individuals of ordinary intelligence to guess at its meaning as it, among other omissions, fails to establish when the required permit application must be filed, does not define the word "undertake" and fails to set forth who must file the permit application.

(Complaint ¶ 85–88.)

While the Second Circuit has not yet spoken on this issue, I conclude that New Rochelle cannot maintain a claim under these Clauses.

■■■■ It has long been the case that a municipality may not invoke the protections of the Fourteenth Amendment against its own state. *See City of Newark v. New Jersey*, 262 U.S. 192, 196, 43 S.Ct. 539, 67 L.Ed. 943 (1923). A municipality is thus prevented from attacking state legislation on the grounds that the law violates the municipality's own rights. *See, e.g., City of New Orleans v. New Orleans Water-Works Co.*, 142 U.S. 79, 89–91, 12 S.Ct. 142, 35 L.Ed. 943 (1891); *Hunter v. City of Pittsburgh*, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907). Moreover, while municipalities or other state political subdivisions may challenge the constitutionality of state legislation on certain grounds and in certain circumstances, these do not include challenges brought under the Due Process or Equal Protection Clauses of the Fourteenth Amendment. *See, e.g., Rogers v. Brockette*, 588 F.2d 1057 (5th Cir.), *cert. denied*, 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979) (local school district had capacity to challenge constitutionality of state statute under Supremacy Clause); *San Diego Unified Port District v. Gianturco*, 457 F.Supp. 283 (S.D.Cal.1978) *aff'd* 651 F.2d 1306 (9th Cir.1981), *cert. denied* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982) (political subdivision can challenge constitutionality of state legislation under Supremacy clause). This is because "a municipal corporation, in its own right, receives no protection from the Equal Protection or Due Process Clauses vis-a-vis its creating state." *South Macomb Disposal Authority v. Township of Washington*, 790 F.2d 500, 505 (6th Cir.1986) (citing *City of Moore v. Atchison, Topeka & Santa Fe Railway Co.*, 699 F.2d 507, 511–12 (10th Cir.1983); *Delta Special School District No. 5 v. State Board of Education*, 745 F.2d 532, 533 (8th Cir.1984); and others). The Due Process and Equal Protection Clauses "have not been interpreted as limitations on the internal political organization of a state." *Id.*

In *South Macomb*, the Sixth Circuit addressed the question of whether a municipal corporation could sue another township within the same state on the ground that the township imposed certain waste disposal permitting requirements in violation of the municipal corporation's right to due process and equal protection. Applying the same reasoning that has led federal courts to bar municipalities from bringing due process and equal protection claims against their own states, the Sixth Circuit concluded:

> [T]he Fourteenth Amendment simply does not prescribe guidelines and impose restriction upon one political subdivision vis-a-vis another political subdivision. *The relationship between the entities is a matter of state concern; the Fourteenth Amendment protections and limitations do not apply. Id.* (emphasis added).

The *Macomb* court thus held that a municipality may not assert a substantive claim for protection of its rights against any other municipality or state political subdivision and dismissed the case. *See Id.*

I agree with the holding of *South Macomb*, and dismiss Counts V and VI to the extent they allege a violation of New Rochelle's rights as a governmental entity.

Although not addressed by the parties (because, stunningly, they both missed the threshold question of municipal rights under the Fourteenth Amendment), I note that the *Macomb* opinion left one issue unresolved: whether the rule barring municipalities from bringing Fourteenth Amendment claims against one another would apply to a municipal corporation bringing a challenge in its proprietary—not its governmental—capacity. *See Owen v. City of Independence*, 445 U.S. 622, 644, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (discussing the dual nature of the municipal corporation and different standards of tort liability to be applied to municipalities acting in their governmental or proprietary

capacities). However, even assuming that Plaintiff brought the claim in its proprietary capacity (which one could glean from at least some of the argument in Plaintiff's brief), I need not resolve this interesting question.

■ In order to plead a violation of its due process rights under the Fifth and Fourteenth Amendments, a plaintiff must allege that it has a protectable property interest, that it was deprived of that property interest by the adoption of the Local Law; and that the deprivation occurred without due process of law or the payment of just compensation. *See Board of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Brady v. Town of Colchester*, 863 F.2d 205, 211 (1988).

As noted above, any real property takings claim is not presently justiciable because New Rochelle has not applied for approval through the Local Law. (*See* Part II.B(2), *supra.*) With its alternative theory, Plaintiff argues that Mamaroneck has interfered with its jurisdiction and control over the Urban Renewal project, and has thereby interfered with its ability as a sovereign municipality to bestow various "forms of largess"—including land use approvals and permits—upon private applicants within its own municipal boundaries. New Rochelle contends that it maintains a property interest in the power to grant permits, and that any derogation of that power is a deprivation of its property.

In support of its novel argument that government "largess" is a property interest, New Rochelle cites *United States v. Novod*, 927 F.2d 726 (2d Cir.), *cert. denied*,

500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991), a criminal case in which the defendant was indicted on charges of wire and mail fraud, perjury and conspiracy for assisting co-defendants in their fraudulent attempt to obtain a permit to operate a waste dump site in New York State.[7] The mail and wire fraud charges were based on the violation of 18 U.S.C. §§ 1341, 1342 and 1343, on the theory that defendant fraudulently received the dump site permit, which was itself· the "money or property" of New York State.[8] Defendant was convicted of multiple counts of perjury, mail fraud and wire fraud and one count of conspiracy. On original hearing, the Second Circuit affirmed the mail and wire fraud convictions on the ground that a permit to operate a waste dump site constituted "money or property" within the meaning of the mail and wire fraud statutes. The Court noted:

> [T]he [waste site] permit constitutes property within the reach of the fraud statutes … Although the property lost by the state is not pecuniary, it is akin to … the right to control a substantial "asset" central to its organizational mission.

*Novod*, 923 F.2d at 974–975.

The Second Circuit rejected defendant's "implicit contention that the government has no property interest in the various forms of largess it bestows." *Id.* In so holding, the Circuit drew an analogy to taxi medallions, a form of largess that, while holding no intrinsic value when in the hands of the government, nevertheless constitutes a "public property" prior to being conveyed to the private license hold-

---

7. The mail fraud count in the original indictment alleged that the defendant used the mails "with the aim of defrauding the New York State Department of Environmental Conservation and the inhabitants of Montgomery, New York and surrounding areas in to awarding a lucrative permit or transfer of permit to conduct alleged construction and demolition debris dumping." *Novod*, 923 F.2d 970, 972.

8. The mail fraud provision in pertinent part prohibits the use of the mails in furtherance of "any scheme or artifice to defraud, or for obtaining *money or property* by means of false or fraudulent pretenses, representations or promises." 18 U.S.C. § 1341 (emphasis added). The wire fraud provision has the same "money or property" requirement; both statutes are construed identically. *See United States v. Covino*, 837 F.2d 65, 71 (2d Cir. 1988).

er. *Id.* (citing the facts and holding of *United States v. Turoff,* 701 F.Supp. 981 (E.D.N.Y.1988)).[9] "The sovereign can buy and sell and manufacture and derive proceeds ... only by virtue of the power it possesses as sovereign—namely its police power, its power to tax, etc .... the goods or chattels or money obtained from a private person from similar schemes or artifices." *Id.* at 975.

Defendants note that, because *Novod* addresses the question of whether a permit can be construed as property of the State for purposes of criminal wire and mail fraud, it is inapposite to the facts before the Court. Without discussion of *Novod* or citation to any other case law, Defendants conclude that the meaning of "property" within the federal criminal statutes is a different concept from "property" within the meaning of the Due Process Clause.

 First, I note that it was the permits themselves that the *Novod* Court found to represent "property"—not the power to serve as the final arbiter of the permitting process. Thus, even if I were to accept the reasoning of *Novod* and apply it to the facts here, New Rochelle's claim that the Local Law represented a taking of that property in violation of the Fifth and Fourteenth Amendments, such a claim would be non-justiciable until Mamaroneck actually rendered a final decision under the law. Second, the holding of *Macomb* compels me to conclude that, where the authority to grant "largess" is

conferred by the state, it is matter of state law to resolve any alleged infringements on that authority. It is simply not a question of the property rights of a "person" as contemplated by the Due Process Clause.[10]

 Plaintiff's allegation of an equal protection violation likewise fails. Where a statute challenged under equal protection does not burden a fundamental right or draw a distinction based on suspect classification, the statute will be upheld if it is rationally related to a legitimate government purpose. *See Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir.1997). Plaintiff does not allege here that the law either classifies on the basis of suspect class or burdens a fundamental right. Thus, Plaintiff can make out an equal protection claim only by alleging that the classification is not reasonably related to any conceivable legitimate state purpose. *See Minnesota v. Clover Leaf Creamery Co.* 449 U.S. 456, 466, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981). Applying that standard to the allegations of the complaint, I find that Mamaroneck had a legitimate governmental purpose in determining that developments of a certain size and location required additional environmental review.

Plaintiff next argues that the Local Law distinguishes between "applicable projects that are adjoining or adjacent to a Town street, but not similar projects that are adjoining or adjacent to a State or County road located within the Town of Mamaroneck." (Plaintiff's Brief at 22.) It further argues that the Law impermissibly distin-

---

**9.** The Second Circuit noted that it was staking out a position at odds with the law in several other circuits. *See, e.g., United States v. Granberry,* 908 F.2d 278, 280 (8th Cir.1990) (school bus operator permits is not "property" under the wire and fraud statutes); *United States v. Kato,* 878 F.2d 267, 268–69 (9th Cir.1989) (federal pilot licenses not property before government issuance); *Toulabi v. United States,* 875 F.2d 122, 125 (7th Cir.1989) (taxi drivers' license, in city government's hands, "is a promise not to interfere, rather than a sliver of property"); *United States v. Murphy,* 836 F.2d 248, 254 (6th Cir.) ("unissued certificate of registration [to conduct

bingo games] is not property of the state of Tennessee."), *cert. denied,* 488 U.S. 924, 109 S.Ct. 307, 102 L.Ed.2d 325 (1988). The Third Circuit on the other hand reached the same conclusion as the Second. *See United States v. Martinez,* 905 F.2d 709, 713–15 (3d Cir. 1990) (state-issued license to practice medicine held to constitute "property").

**10.** Furthermore, Plaintiff has no basis for bringing suit under Section 1983, and therefore would have no basis on which to assert a Due Process or Equal Protection claim (*see* Section II. E(3), *infra* ).

guishes between residents and non-residents of Mamaroneck. (*Id.*) The first argument is silly, as the Law clearly states it is concerned about a specific area adjoining Mamaroneck's border; I do not read Mamaroneck's use of the terms "town road" as making any distinction between types of roads within Mamaroneck. In any event, neither of these arguments, however, is enough to meet the high threshold for equal protection challenges to economic regulations. The purposes of the Local Law are stated in the law itself and clearly establish the relationship between the law and Mamaroneck's interest in the health, safety, welfare, comfort and convenience of its residents.

Finally, Plaintiff alleges that the Local law is "impermissibly and unconstitutionally vague, because it requires individuals of ordinary intelligence to guess at its meaning as it, among other omissions, fails to establish when the required permit must be filed, does not define the word 'undertake' and fails to set forth who must file the permit application." (Complaint ¶ 88.) I find this claim without merit and dismiss it.

 Plaintiff is correct that, when a statute is found to be vague, it is considered a violation of the Due Process Clause. A statute is unconstitutionally vague on its face when it specifies no "comprehensible standard or guide capable of interpretation." *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). The courts have held that a determination of vagueness depends upon "whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and ... whether the law provides explicit standards for those who apply it." *United States v. Schneiderman*, 968 F.2d 1564, 1568 (2d cir.1992), *cert. denied*, 507 U.S. 921, 113 S.Ct. 1283, 122 L.Ed.2d 676 (1993), *rehearing denied*, 507 U.S. 1046, 113 S.Ct. 1884, 123 L.Ed.2d 502 (1993). The *Schneiderman* Court made clear that the threshold for a facial vagueness claim requires that a plaintiff plead not just that the language of the statute creates an imprecise standard, but rather that it creates no standard at all. *Id.* at 1567. The Second Circuit had opportunity to affirm this standard when it recently held that "regulations satisfy due process as long as a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, has fair warning of what the regulations require." *Rock of Ages Corp. v. Secretary of Labor*, 170 F.3d 148, 156 (2d Cir.1999).

 The language of the Local Law clearly sets forth the parameters of the land developments to which it applies, the items required for an application and the standards by which an application is judged. The failure of the Local law to define "undertake", or to identify who the applicant must be, does not amount to the absence of a standard. On its face, the Local law apprises a person reasonably knowledgeable about land use matters as to what the law requires.

Counts V and VI are dismissed for failure to state a claim.

### E. *Counts VII and VIII: Civil Rights Law Claims*

Plaintiffs Seventh and Eighth Causes of Action allege claims under 42 U.S.C. § 1983 and § 1988 for damages and attorney's fees arising from the federal constitutional violations asserted in Counts IV, V and VI. Of those claims, only the dormant Commerce Clause claim remains, which may be asserted under Section 1983. *See Dennis v. Higgins*, 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). I nonetheless hold that Plaintiff is not entitled to sue under Section 1983.

 Again, neither party has briefed the central issue for determination of these claims: whether New Rochelle, as a municipality, may maintain a suit to vindicate its sovereign rights. I find it cannot.

The language of Section 1983 authorizes the assertion of a claim for relief by "any citizen of the United States or other person within the jurisdiction thereof." Determining whether a party is a "citizen" or "other person" is distinct from the issue of standing. *See* Martin A. Schwartz and John E. Kurtin, *Section 1983 Litigation*, at 69 (3d ed.1997). The Second Circuit has yet to take a position on whether municipalities are "other persons," and the circuits that have addressed it are split. In *City of Safety Harbor v. Birchfield*, 529 F.2d 1251 (5th Cir.1976), the Fifth Circuit held that a municipality is not an "other person" entitled to bring suit under Section 1983. That court relied on the ruling in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that a municipality is not a "person" for purposes of being sued under Section 1983, and on the fact that Congress' purpose in passing Section 1983 was to create a federal remedy for private parties, not government bodies.

Following *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which partially overturned *Monroe v. Pape* and held that, under certain circumstances, municipalities could be liable as "persons" under Section 1983, the Fifth, Seventh and Eleventh Circuits have held that municipalities are not "persons" who may seek relief under Section 1983. *See Rockford Board of Education v. Illinois State Board of Education*, 150 F.3d 686, 688 (7th Cir.1998) ("... a city or other municipality cannot bring suit under" § 1983) (dictum); *United States v. Alabama*, 791 F.2d 1450 (11th Cir.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987); *Randolph County v. Alabama Power Co.*, 784 F.2d 1067 (11th Cir.), *modified*, 798 F.2d 425 (11th Cir.1986), *cert. denied* 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 833 (1987); *Appling County v. Municipal Elec. Auth.*, 621 F.2d 1301 (5th Cir.), *cert. denied* 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980). These courts reasoned that *Monell*'s holding that municipal entities may be proper Section 1983 *defendants* does not render them proper Section 1983 *plaintiffs*. These courts further noted that *City of Safety Harbor*'s reliance on congressional intent remains valid after *Monell*. These opinions also rely on the Supreme Court authority discussed above holding that a municipality may not seek relief under the Fourteenth Amendment. *See Coleman v. Miller*, 307 U.S. 433, 441, 59 S.Ct. 972, 83 L.Ed. 1385 (1939). *See also Illinois v. City of Chicago*, 137 F.3d 474 (7th Cir.1998) (state is not a "person" entitled to sue under § 1983).

The Sixth Circuit has taken the opposite position, holding that "in light of *Monell*, it would be a strained analysis to hold, as a matter of statutory construction, that a municipal corporation was a 'person' within one clause of section 1983, but not a 'person' within another clause of the same statute." *South Macomb Disposal Authority v. Township of Washington*, 790 F.2d 500, 504–503 (6th Cir.1986). Having held that municipalities may sue under Section 1983, the Sixth Circuit nonetheless determined that a municipal entity may not assert violations of the privileges and immunities, equal protection or due process clauses of the Fourteenth Amendment. *See South Macomb*, 790 F.2d at 504, 505; discussion *supra*.

I agree with the Fifth, Seventh and Eleventh Circuits and hold that New Rochelle may not bring suit under Section 1983. Congress intended Section 1983 to provide private citizens with a remedy against state action. It would run counter to that intent to allow a governmental subdivision to sue another governmental subdivision for damages under Section 1983.

Even though Plaintiff is unable to assert a claim for damages and attorneys fees under Section 1983, its Commerce Clause claim may be maintained as an action for injunctive and declaratory relief on the basis that the Local Law is an unconstitutional constraint on interstate commerce. *See, e.g., In re Beer Institute*, 849 F.2d 753

(2d Cir.1988). It is for this reason that I do not dismiss Count IV. However, because New Rochelle has no standing to sue under Section 1983, it cannot recover attorney's fees in connection with that claim pursuant to Section 1988.

## III. NEW ROCHELLE'S CROSS-MOTION TO REMAND

New Rochelle moves this Court to remand the claims arising under the New York State Constitution and the laws to the New York State Supreme Court. The motion is granted.

Defendants oppose Plaintiff's motion on the ground, *inter alia*, that general abstention doctrines do not apply to the instant case. Plaintiff, however, does not rely on any abstention doctrines to support its argument. Rather, Plaintiff argues that the Court should decline to exercise supplemental jurisdiction for two reasons: (1) pursuant to 28 U.S.C. § 1367(a), on the ground that the claims raise novel and complex issues of State law; and/or (2) pursuant to 28 U.S.C. § 1367(c)(2), on the grounds that the State law claims substantially predominate over the federal claims. In the alternative, Plaintiff argues that the Court does not have supplemental jurisdiction over the State law claims under 1367(a) because the State law claims are wholly unrelated to the federal claims.

### A. *Supplemental Jurisdiction to Hear the Claims*

I address Plaintiff's last argument first, where it logically belongs, and hold that the case was properly removed to federal court. Four of Plaintiff's eight claims involved questions of federal constitutional or statutory law. The Court thus had original jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331 and 1343. New Rochelle, which appended the federal claims to the complaint, nonetheless argues that the State law claims were improperly removed because they raise distinct legal issues that will require legal and factual analysis distinct from the federal constitutional claims.

It is well established that in order for this Court to exercise supplemental jurisdiction over the State law claims, the claims must be "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Thus, federal courts have supplemental jurisdiction to hear claims arising under state law when:

> (1) there is a claim arising under the constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir.1989) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

There is no dispute that Plaintiff has raised federal claims sufficient to confer federal subject matter jurisdiction.[11] The only issue is whether the additional prerequisites for supplemental jurisdiction have been met. I find they have.

Plaintiff is correct that its state law challenge to the Local Law on grounds of SEQRA preemption and violation of the Municipal Home Rule Law are legally distinct from the remaining federal claim. The Commerce Clause claim will require

---

**11.** Plaintiff's invocation of the presumption against removal in cases that involve solely state claims is misplaced here, where the complaint stated four separate grounds for original federal court jurisdiction. The case cited by Plaintiff, *Lupo v. Human Affairs Int'l Inc.*, 28 F.3d 269 (2d Cir.1994), is inapposite, involving removal on diversity grounds and not supplemental jurisdiction.

proof of the Local Law's impediment to the free flow of interstate commerce, and the state law challenges will require analysis of the comprehensiveness of the SEQRA scheme. However, the federal and state claims arise from the "common nucleus of operative fact." The enactment of the Law and the Mamaroneck Town Board's actions taken in conjunction with that enactment represent the common nucleus of operative fact. I therefore agree with Defendants that this Court's jurisdiction over the state law claims would be proper under either Section 1367 as to supplemental jurisdiction, or under Section 1441 applicable to removal jurisdiction.

Determining that the removal is proper and that supplemental jurisdiction is proper, however, is not the end of my inquiry. As the Supreme Court has noted, the doctrine of supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (citing *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130). I turn now to the grounds under which this Court has discretion to decline to exercise supplemental jurisdiction and remand the state law claims.

### B. *Grounds for Declining Supplemental Jurisdiction*

Plaintiff argues that this case raises unprecedented issues that go to the heart of local government autonomy, land use and environmental law and policy in New York State. The crux of Plaintiff's state law claim is that Mamaroneck's attempt to regulate development outside its own borders exceeds the authority granted to municipalities in the New York State Constitution and the Municipal Home Rule Law. Further, Plaintiff alleges that the Local Law violates SEQRA, which is a statewide environmental regulation preempting any municipal ordinances. Plaintiff argues that each of the state law claims raises unique and critical questions of New York law and that this Court should decline to

exercise jurisdiction over them in the interests of comity and federalism. I agree.

28 U.S.C. § 1367(c) permits a federal court to decline to exercise supplemental jurisdiction where "the claim raises novel or complex issues of state law" or "the claim substantially predominates over the claim or claims over which the court has original jurisdiction." And where the Court declines to exercise supplemental jurisdiction, it has discretion to remand the case back to state court. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (district courts have "discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.")

The New York State law claims in the case are exemplars of the type of novel and complex state law issues which federal courts have no business deciding, especially on a matter of first impression. Plaintiff's claims go the very heart of New York's constitutional jurisprudence and interpretation of the State Municipal Home Rule Law and SEQRA—the two State statutes that form the foundation of municipal power over zoning, development and protection of the environment. The Second Circuit has noted that "it is fundamental that 'needless decision of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'" *Young v. New York City Trans. Auth.,* 903 F.2d 146, 163–64 (2d Cir.), *cert. denied,* 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990) (quoting *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130); *Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir.1998). *See also Bletter v. Incorporated Village of Westhampton Beach,* 88 F.Supp.2d 21, 26–27 (E.D.N.Y.2000): *Hone v. Cortland City School District,* 985 F.Supp. 262, 273 (N.D.N.Y.1997); *Support Ministries for Persons with Aids, Inc., v. Village of Waterford,* N.Y., 799 F.Supp.

272, 279–280 (N.D.N.Y.1992). The Second Circuit has specifically held that:

Where a pendent [supplemental] state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of comity and federalism may dictate that these questions be left for decision by the state courts.

*Seabrook,* 153 F.3d at 72.

This challenge to Mamaroneck's law raises several issues of first impression in New York State. It is undisputed that the predominant issues in this case concern local municipalities' fundamental State law rights to govern and administer land use within their borders. The State Constitution and Home Rule Law create a comprehensive and carefully crafted system of municipal autonomy in New York State, which delegate specific powers to local governments, including the power to adopt and amend local laws relating to their property, affairs or government. The SEQRA challenge is equally unique and goes to the applicability of New York State legislative preemption doctrines and the State legislature's power to establish a comprehensive regulatory scheme. Resolution of the State issues here require a determination of the parameters of state and municipal authority, and will therefore have wide-reaching impact on issues fundamental to governance of New York State.

While not explicitly relying on well-established preemption doctrines, Plaintiff notes that Section 1367(c)(1) serves a purpose analogous to the abstention doctrine set forth in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 498, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See St. George,* 842 F.Supp. at 632 n. 22. *See also Bad Frog Brewery,* 134 F.3d at 102 (declining supplemental jurisdiction and noting that, but for specific concerns in that case concerning the First Amendment, the "uncertain state law issues would have provided a strong basis for *Pullman* ab-

stention.") The same considerations for avoiding "needless friction" that harms comity and federalism discussed by the *Pullman* Court come into play here.

Section 1367(c)(2) provides a separate ground for declining to exercise supplemental jurisdiction over the state law claims. Where the state claims "constitute the real body of a case" to which federal claims are "an appendage," declining jurisdiction under this provision is appropriate to prevent a situation wherein "permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *State of New York v. Phillip Morris Inc.,* No. 97 Civ. 794, WL 2574 at *2 (Jan. 5, 1998, S.D.N.Y.1998) (quoting *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 789 (3d Cir.1995)).

The Court, acting pursuant to 28 U.S.C. § 1367(c)(1) and (2), remands all of Plaintiff's State law claims to the New York State Supreme Court for adjudication.

## C. *Federal Claim Stayed Pending Resolution of State Law Claims*

Plaintiff urges this Court to remand the remaining federal claims to the New York Supreme Court so that the entire case may be adjudicated together. I decline to do so. There is some difference of opinion as to whether a District Court may properly remand a federal claim over which it has original jurisdiction when it remands state law claims that predominate in the case. Prior to its amendment in 1990, 28 U.S.C. § 1441(c) provided:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or in its discretion, may remand all matters not otherwise within its original jurisdiction.

The amended version provides:

Whenever a separate and independent claim or cause of action within the juris-

diction conferred by section 1331 of this title is joined by one or more non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or in its discretion, may remand all matters in which State law predominates.

Some district courts have interpreted the new provision as granting judges broad discretion to remand federal claims to state court along with the state claims, on the ground that the entire complaint involves "matters in which State law predominates." *See, e.g., McKinney v. City of Grosse Pointe Park,* 72 F.Supp.2d 788, 790 (E.D.Mich.1999) (holding, pursuant to § 1441(c), that "[w]hen state law claims predominate in a civil action premised on federal question jurisdiction, the district court may remand the whole civil action to state court" and remanding entire action "in light of the predominance of state law questions").

However, I am not persuaded by the *McKinney* court, because the requirement that the claims be "separate and independent" was not changed by the 1990 amendment:

Prior to Congress' amendment of Section 1441(c) to exclude diversity cases, the Supreme Court interpreted the language of "separate and independent" as: "[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under Section 1441(c)." *Surprise v. GTE Service Corporation,* 47 F.Supp.2d 240, 243 (D.Conn.1999) (citing *American Fire and Casualty Co. v. Finn,* 341 U.S. 6, 14, 71 S.Ct. 534, 95 L.Ed. 702 (1951)).

Far more persuasive on this point is Judge Cederbaum's opinion in *Hickerson v. City of New York,* 932 F.Supp. 550 (S.D.N.Y.1996). There, plaintiffs challenged a city ordinance restricting the zoning of adult entertainment establishments on the basis of several New York State and federal constitutional provisions. There, as here, the plaintiffs brought the case in New York State court, and defendants removed to federal court. Plaintiffs then moved to remand the entire case to state court. Judge Cederbaum applied *Pullman* abstention and declined to exercise supplemental jurisdiction over the New York State constitutional questions in the case. She further granted plaintiff's motion to remand the state claims to the New York court. However, she rejected plaintiffs' argument that the last clause of Section 1441(c), as amended, permitted courts to remand the entire case—including federal claims—whenever state law questions predominated. She declined to remand the federal constitutional claims, which she stayed pending the outcome of the New York State claims.

In her analysis, Judge Cederbaum noted first that the plaintiffs' federal claims were not "separate and independent" from their state law claims. *See Hickerson,* 932 F.Supp. at 558. She concluded that where the state claims are pendent, or supplemental, they necessarily arise from a single wrong and cannot be construed as "separate and independent" for the purposes of Section 1441(c). Second, she interpreted the word "matter" as not encompassing federal claims, in light of "the federal courts' strong view of their obligation to exercise federal jurisdiction over federal claims properly before them." *Id.* In so holding, Judge Cederbaum agreed with the Fifth and Sixth Circuits' interpretation of Section 1441(c). *See Buchner v. Federal Deposit Ins. Corp.,* 981 F.2d 816 (5th Cir.1993); *Kabealo v. Davis,* 829 F.Supp. 923 (S.D.Ohio 1993) *aff'd,* 72 F.3d 129 (6th Cir.1995). She declined to follow the reasoning of the several district courts holding that remand of entire cases—including the federal claims—was proper. *See, e.g., Moralez v. Meat Cutters Local 539,* 778 F.Supp. 368 (E.D.Mich.1991); *Alexander by Alexander v. Goldome Credit Corp.,* 772 F.Supp. 1217 (M.D.Ala.1991); *Moore v. DeBiase,* 766 F.Supp. 1311

(D.N.J.1991). Finally, she concluded that, even if Section 1441(c) did grant the court discretion to remand the plaintiffs' First Amendment claim, she would not do so: "A 'matter' that includes a substantial federal constitutional claim cannot be a matter in which state law predominates." *Id.*

■ Because both the federal and state claims here pleaded arise from a single wrong to Plaintiff—passage of the Local Law by Mamaroneck—I find Judge Cederbaum's reasoning persuasive and decline to remand the Commerce Clause claim. I note that it was the Plaintiff who appended the federal claims to their complaint and thus introduced federal question jurisdiction into the case. Defendants are well within the law to insist that this Court retain jurisdiction to decide any federal claims. Of course, if Plaintiffs are now of the view that the state law claims so predominate in the case as to render the remaining Commerce Clause claim inconsequential to the outcome, they may dismiss that claim on their own motion. Barring that development, however, their Commerce Clause claim is stayed pending resolution of the state claims.

## CONCLUSION

The state law claims, Counts I, II, III, IV and VIII, are hereby remanded to the New York State Supreme Court. Counts V and VI are dismissed. Count IV, the Commerce Clause claim, is stayed pending resolution of the State law claims.

This constitutes the decision and order of this Court.